IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN BEAUVAIS,

      Plaintiff,

                                No.:

vs.                             Hon.

CITY OF INKSTER and
BOOKER SNOW,

      Defendants

_____/

LEONARD KRUSE, P.C.
BY:  NORBERT B. LEONARD (P40056)
      KELLY A. KRUSE (P45538)
Attorneys for Plaintiff
4190 Telegraph Road
Suite 3500
Bloomfield Hills, Michigan 48302
248/594.7500

_____/

There is no other pending or resolved
civil action arising out of the transaction
or occurrence alleged in the Complaint.

s/Kelly A. Kruse (P45538)

**COMPLAINT AND JURY DEMAND**

**NOW COMES** Plaintiff, Susan Beauvais, by and through her attorneys,

Leonard & Kruse, P.C. and as and for her Complaint against the above named

Defendants states as follows:

1.      At all times relevant hereto, Plaintiff, Susan Beauvais, has been a resident of Wayne County, Michigan.

2.      Defendant, City of Inkster, is a governmental entity located in Wayne County, Michigan and is duly organized under the laws of the State of Michigan.

3.      Defendant, Officer Booker Snow, was at all times relevant hereto, an employee of the Defendant, City.

5.      The actions giving rise to this Complaint occurred in Wayne County, Michigan.

6.      Jurisdiction is vested in this Court by 28 U.S.C. §1331.

### GENERAL ALLEGATIONS

7.      Plaintiff restates and realleges paragraphs one through six as if fully set forth herein and in further support of her cause of action states as follows:

8.      At all times relevant hereto, Plaintiff was an employee of the Defendant, City of Inkster.

9.      At all times relevant hereto, Plaintiff was employed by the Defendant, City, as a police officer.

10.     Throughout the course of her employment and relationships with the Defendant, City, Plaintiff performed her assigned duties in a satisfactory manner.

11.     Plaintiff began her employment with Defendant, City, in November, 2007.

12.     On April 24, 2014, Plaintiff submitted a complaint to her employer which set forth the sexual harassment to which she had been subjected by co-worker, Officer Booker Snow.

13.     Although an "investigation" was conducted of Plaintiff's Complaint on behalf of Defendant, City, Officer Snow received only a slap on the wrist as punishment.

14.     After making the sexual harassment complaint, Plaintiff became the subject of derision, harassment and retaliation by her co-workers and by management.

15.     In September, 2014, Plaintiff was diagnosed with acute work related stress and ordered by her physician to take a leave of absence from work.

16.     Upon receipt of the notice of Plaintiff's request for a leave of absence, Defendant, City, instructed Plaintiff to complete a request for worker's compensation benefits.

17.     By December 30, 2014, Plaintiff's physician had cleared her to return to work without restrictions.

18.     Upon receiving the release to return to work, Plaintiff promptly

notified her employer that she was able to return to work without restrictions.

19.     Notwithstanding the fact that it received notice that Plaintiff was cleared to return to work without restrictions, the Defendant, City, failed and refused to return her to the on-duty schedule or accept her bid for a platoon.

20.     Although other officers have, through the years, been off of work for various medical reasons, when cleared to return to work no other officer was denied the opportunity return to work.

21.     In January, 2015, Plaintiff filed a charge with the EEOC in which she alleged that Defendant, City, had violated the Americans with Disability Act and that Plaintiff had been subject to sexual harassment and gender discrimination while employed by the Defendant.

22.     On February 10, 2015, Plaintiff met with representatives of the City. During that meeting she was advised that in order to be returned to active duty she needed to withdraw her worker's compensation claim.

23.     Shortly thereafter, Plaintiff was advised that if she failed to withdraw her pending worker's compensation claim, she risked termination from employment.

24.     At the same time, Defendant presented Plaintiff with a generic document to sign which indicated that she was withdrawing any allegations of

work related disability.

25.     The aforedescribed letter was presented to Plaintiff for signature after Defendant became aware of Plaintiff's EEOC charge contained allegations that Defendant had violated the ADA.

26.     Other acts of retaliation committed by the Defendant, City, and/or its employees include, but are not limited to:

a.     Failing and refusing to timely tender back pay to Plaintiff;

b.     Assigning another officer to ride with Plaintiff - an unusual, if not unprecedented assignment - who was ordered to obtain information against Plaintiff which could form the basis of discipline against Plaintiff;

c.     Placing a gun suspension notice in Plaintiff's personnel file and ordered Plaintiff to relinquish her department issued weapon while she was on disability leave - a tactic not used when other officers have been on disability leave;

d.     Maintaining a separate file - apart from Plaintiff's personnel - concerning Plaintiff;

e.     Advising Plaintiff that it would only return her to work if she would withdraw her pending worker's compensation claim

even though it was not Plaintiff who initiated the worker's

compensation claim;

f.    Threatening Plaintiff with termination if she did not withdraw

the worker's compensation claim which she had not initiated;

g.    Preventing Plaintiff from applying for a detective position by

refusing to return her to work on a timely basis;

h.    Denying valid grievances filed by Plaintiff;

i.    When it eventually returned Plaintiff to work in late May,

2015, it only returned her to a part-time Tier II position;

j.    Failing to award Plaintiff an undercover narcotics position on a

timely basis;

k.    Failing to timely pay for overtime worked by Plaintiff;

l.    Refusing a requested shift change; and

m.    Initially denying Plaintiff's request for FMLA leave and only

relenting after Plaintiff showed Defendant their payroll

documents which established her eligibility for FMLA leave.

n.    Pulling Plaintiff's husband over for traffic infractions for which

other Inkster citizens were not regularly pulled over.

## COUNT I

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

27.     Plaintiff restates and realleges paragraphs one through twenty-six as if fully set forth herein and in further support of her cause of action states as follows:

28.     On or about December 30, 2014, Plaintiff presented Defendant, City, with proof that she had been medically cleared to return to work without restrictions.

29.     Notwithstanding said notification, Defendant, City, failed and refused to allow Plaintiff to return to work as it perceived her as suffering from a disability.

30.     At all times relevant hereto, Plaintiff was qualified for the position of police officer and able to perform the essential functions of the job.

31.     Nevertheless, Defendant engaged in multiple actions designed to delay Plaintiff's return to duty.  Those actions included, but are not limited to:

   a.     Failing to timely schedule a medical examination for Plaintiff's return to work;

   b.     Failing to schedule Plaintiff's return to work examination with the City psychiatrist, but, instead, scheduling the examination

with a physician affiliated with a corporation which provides

medical examinations for insurance companies and employers;

c.      Failing to provide the physician selected by the City to conduct

with examination with the information necessary to conduct the

examination thereby resulting in the rescheduling of the return

to work examination;

d.      Advising Plaintiff that she was required to sign a document

disavowing any work related disability before being allowed to

return to work;

e.      Requiring Plaintiff to withdraw her pending worker's

compensation claim before allowing her to return to work; and

f.      Such other and further acts as may be discovery during the

pendency of this matter.

32.    As a direct and proximate result of Defendants' violation of the

Americans with Disabilities Act, Plaintiff has suffered significant damages

including but not limited to a loss of earnings and benefits, emotional distress,

mental anguish, physical distress,  sleeplessness and the attendant financial

damages which accompanied her loss of earnings.

## COUNT II

## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

33.     Plaintiff restates and realleges paragraphs one through thirty-two as if fully set forth herein and in further support of her cause of action states as follows:

34.     At all times relevant hereto, Plaintiff qualified for FMLA leave.

35.     At all times relevant hereto, Defendant was subject to the provisions of the FMLA.

36.     On or about December 10, 2015, Plaintiff submitted a request for FMLA leave.

37.     When Plaintiff submitted her request for FMLA leave she was engaging in a protected activity.

38.     Notwithstanding Plaintiff's satisfaction of the hours requirement for FMLA leave and being otherwise eligible for leave, Defendant advised Plaintiff that it would not grant her requested leave.

39.     Defendant's refusal to grant Plaintiff her requested leave constitutes an unlawful interference with the rights afforded to her under the FMLA.

40.     After having her FMLA leave request denied, Plaintiff went through all of her pay stubs and proved to Defendant that she was eligible for FMLA leave.

41.     Only then did Defendant approve Plaintiff's leave.

-9-

42.     If Plaintiff had not been in possession of the documents establishing her entitlement to FMLA leave, the Defendant's denial of her request would have stood.

43.     As a direct and proximate result of Defendants' violation of the Family and Medical Leave Act, Plaintiff has suffered significant damages including but not limited to a loss of earnings and benefits, emotional distress, mental anguish, physical distress,  sleeplessness and the attendant financial damages which accompanied her loss of earnings.

## COUNT III

## VIOLATION OF THE ELLIOTT LARSEN CIVIL RIGHTS ACT

44.     Plaintiff restates and realleges paragraphs one through forty-three as if fully set forth herein and in further support of her cause of action states as follows:

45.     Plaintiff is female and is a protected person under the Elliott Larsen Civil Rights Act.

46.     During the course of Plaintiff's employment with Defendant, City, Plaintiff has been subjected to unwelcome comments and conduct of a sexual nature by Defendant, Snow.

47.     After Plaintiff returned to employment following a layoff, Plaintiff

began experiencing both sexual harassment and gender discrimination at the hands

of Defendant, Snow.

48.     Among the acts of harassment and discrimination directed towards

Plaintiff were the following:

a.      On or about April 12, 2014, Plaintiff was relaying an incident

to a fellow officer when Officer Snow approached her and said,

"you're feeling frisky aren't you?"  He then stated, "I can take

care of that, yes, I can."

b.      Several days later, while Plaintiff was waiting for roll call, she

was sitting in the department with her hands behind her head

when she noticed Officer Snow taking pictures of her chest.

She immediately put her hands down and in front of her.  As

she did that, Officer Snow told her to put her hands back up

behind her head.

c.      On another occasion, Officer Snow told the Plaintiff that he

showed a picture of Plaintiff to his girlfriend and then said,

"My girl loves black cock and white pussy, you know we really

both could take care of you.  Yeah, we could make you feel

good and totally relax."

d.   On multiple occasions, Officer Snow made comments in
     Plaintiff's presence concerning his sexual activities with the
     two women with whom he lived.

e.   During many other conversations, Officer Snow referred to the
     women with whom he lived as "ho's."

f.   More than once, Officer Snow engaged in conversations,
     within earshot of the Plaintiff, with the women with whom he
     lived telling them to get naked before he got home because he
     wanted to "be sucked."

g.   On another occasion, Officer Snow mocked Plaintiff when she
     responded to a call to which she had been dispatched.  This
     occurred on a channel to which the entire department other
     departments had access.  Plaintiff has not known Officer Snow
     to engage in similar behavior towards male colleagues.

46.   At all times relevant hereto, the aforedescribed conduct and
communications to which Plaintiff was subjected was intended to or in fact did
substantially interfere with the Plaintiff's employment and/or created an
intimidating, hostile, or offensive work environment in violation of the Elliott

Larsen Civil Rights Act.

47.     After being subjected to the foregoing, Plaintiff filed a Complaint

with the Defendant, City.

48.     In response thereto, Defendant scheduled sexual harassment training

for all officers, but gave Officer Snow only a token discipline of a two day

suspension.

49.     Officer Snow was allowed to use personal time off for one of the days

thereby effectively reducing the suspension to one unpaid day off.

50.     As a direct and proximate result of Defendants' violation of the Elliot

Larsen Civil Rights Act, Plaintiff has suffered significant damages including but

not limited to a loss of earnings and benefits, emotional distress, mental anguish,

physical distress,  sleeplessness and the attendant financial damages which

accompanied her loss of earnings.

<div align="center">

**COUNT IV**

**VIOLATION OF TITLE VII**

</div>

51.     Plaintiff restates and realleges paragraphs one through fifty as if fully

set forth herein and in further support of her claim states as follows:

52.     42 U.S.C. §2000e *et seq* otherwise known as the Civil Rights Act of

1964 prohibits discrimination and harassment on the basis of sex.

53.    As set forth above, while employed by the Defendant, City, Plaintiff was subjected to comments and conduct of a sexual nature.

54.    The comments and conduct of a sexual nature to which Plaintiff was subjected was sufficiently severe and pervasive so as to create an intimidating, hostile and offensive work environment.

55.    After being subjected to the foregoing, Plaintiff filed a Complaint with the Defendant, City.

56.    In response thereto, Defendant scheduled sexual harassment training for all officers, but gave Officer Snow only a token discipline of a two day suspension.

57.    Officer Snow was allowed to use personal time off for one of the days thereby effectively reducing the suspension to one unpaid day off.

58.    As a direct and proximate result of Defendants' violation of the Civil Rights Act of 1964, Plaintiff has suffered significant damages including but not limited to a loss of earnings and benefits, emotional distress, mental anguish, physical distress,  sleeplessness and the attendant financial damages which accompanied her loss of earnings.

WHEREFORE, your Plaintiff prays that this Honorable Court enter

judgment in favor of Plaintiff and against Defendants in an amount sufficient to

compensate Plaintiff for her damages.  Plaintiff further prays that this Honorable

Court award pre- and post-judgment interest to Plaintiff, attorney fees and costs, as

well as all other damages and remedies to which the Plaintiff is entitled.

<div style="margin-left:40%">

s/Kelly A. Kruse
LEONARD & KRUSE, P.C.
Attorney for Plaintiff
4190 Telegraph Rd., Ste. 3500
Bloomfield Hills, MI 48302
(248) 594-7500
kkruse@leonardkruse.com
P45538

</div>

Dated: August 1, 2016

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

<div style="margin-left:40%">

s/Kelly A. Kruse
LEONARD & KRUSE, P.C.
Attorney for Plaintiff
4190 Telegraph Rd., Ste. 3500
Bloomfield Hills, MI 48302
(248) 594-7500
kkruse@leonardkruse.com
P45538

</div>

Dated: August 1, 2016