UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SUSAN BEAUVAIS, | Case No. 16-cv-12814 |
| Plaintiff, | UNITED STATES DISTRICT COURT JUDGE GERSHWIN A. DRAIN |
| v. | |
| CITY OF INKSTER and BOOKER SNOW, | UNITED STATES MAGISTRATE JUDGE STEPHANIE DAWKINS DAVIS |
| Defendant. | |
| _____/ | |

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO STRIKE DR. HARVEY AGER AS A WITNESS [42] AND DENYING PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OR REFERENCES OF A UNION DECISION [45]**

**I.     Introduction**

Plaintiff Susan Beauvais initiated this action on August 1, 2016, alleging that the Defendants—the City of Inkster, Michigan and former Inkster Police Officer Booker Snow—violated the Americans with Disabilities Act, the Family and Medical Leave Act, the Elliot-Larsen Civil Rights Act under Michigan Law, and Title VII of the Civil Rights Act of 1964. *See* Dkt. No. 1. On November 9, 2017, the Court granted in part and denied in part Defendant City of Inkster's Motion for Summary Judgment. Dkt. No. 38. After the Court's decision, only Plaintiff's Title VII claim of retaliation remains in the litigation. *See id.*

Presently before the Court are two evidentiary motions filed by the Plaintiff: Plaintiff's Motion to Strike Dr. Harvey Ager as a Witness [42] and Plaintiff's Motion *in Limine* regarding Evidence of the Union's Decision Not to Arbitrate Plaintiff's Grievance [45]. The Motion to Strike was filed on December 27, 2017, whereas the Motion *in Limine* was filed on January 12, 2018. *See* Dkt. Nos. 42, 45. These motions are sufficiently briefed.[1] A hearing on these motions was held on Tuesday, February 6, 2018 at 2:00 p.m. Ruling from the bench, the Court DENIED the Plaintiff's Motion to Strike Ager as a Witness [42],[2] and also DENIED the Plaintiff's Motion to Exclude Evidence of the Union Decision [45]. The Court explains its reasoning herein.

## II. Background[3]

### A. Dr. Harvey Ager and Plaintiff's Medical Evaluation

Dr. Ager is a licensed psychiatrist, who operates a private practice in Southfield, Michigan. Dkt. No. 43-18, pp. 2–3 (Pg. ID 2157–58). Ager evaluated

---

[1] The motion to strike Ager is fully briefed, but the Plaintiff did not file a reply in support of her motion to exclude evidence of the union decision.

[2] Plaintiff asserts that if the Court decides to deny the motion to strike, the Court must compel "Dr. Ager to fully comply with the Subpoena served upon him by Plaintiff." Dkt. No. 42, pp. 4–5 (Pg. ID 1709–10). Ager has responded to the subpoena, however. *See* Dkt. No. 42-2. And Ager has stated that he does not have responsive information. *Id.* Accordingly, the Court will also deny this request from the Plaintiff.

[3] For a robust recitation of the facts, please see the Court's November 9, 2017 Opinion and Order on Defendant Inkster's Motion for Summary Judgment. *See* Dkt. No. 38.

Beauvais on March 24, 2015 and again on April 21, 2015 regarding her fitness to return to work as an Inkster Police Officer. Dkt. Nos. 43-12, 43-13. Ager conducted the evaluation on behalf of the Inkster Police Department. *See* Dkt. No. 42, p. 2 (Pg. ID 1707).

Perhaps recognizing the value of his testimony, both Beauvais and Inkster included Ager on their witness lists. *See* Dkt. No. 14, p. 2 (Pg. ID 70); *see also* Dkt. No. 24, p. 2 (Pg. ID 183). In her witness list, Beauvais explained that Ager's testimony would "concern[] his examination of Plaintiff, his opinions as a result of that investigation, his communications with the Defendants as well as his history as a defense and insurance medical examiner." Dkt. No. 14, p. 2 (Pg. ID 70). Inkster described Ager in its witness list as the "[p]sychiatrist retained by City to conduct Independent Medical Examination ("IME")." Dkt. No. 24, p. 2 (Pg. ID 183).

B. Union Decision

While working as an Inkster Police Officer, Beauvais belonged to a union. *See* Dkt. No. 45-2, p. 2 (Pg. ID 2238). Following her suspension, and then termination, from the Inkster Police Department, Beauvais filed a grievance through her union. *Id.*; *see also* Dkt. No. 45, p. 2 (Pg. ID 2227). The grievance protested disciplinary hearing findings that Beauvais was guilty of several offenses involving her medical evaluation with Dr. Ager, including conduct unbecoming of an officer and falsifying documents or perjury. *See* Dkt. No. 53-1, pp. 2–3 (Pg. ID 2629–30).

After proceeding through several steps of the grievance process, the grievance was denied at a mayor's hearing. Dkt. No. 45, p. 2 (Pg. ID 2227). The union did not thereafter request arbitration on Beauvais's behalf, which was the next step in the grievance process. *Id.* In deciding not to pursue arbitration, the union applied the following four-part test regarding whether the falsification charge justified termination:

   1. Was the omission deliberate[?]
   2. Was the omission material[?]
   3. Is it off [sic] continuing materiality[?]
   4. Did the Employer Act [sic] promptly once it found out and in Good Faith[?]

Dkt. No. 53-2, p. 2 (Pg. ID 2632). The union concluded that "[i]n [Beauvais's] case the answers to all four (4) above is yes. Therefore, based on the evidence presented, we do not feel we could or would prevail in an arbitration case." *Id.* As a result, Beauvais's complaint did not proceed further.

## III. Discussion

Plaintiff requests that the Court strike Dr. Ager as a witness. Plaintiff also asks that the Court exclude evidence of the union's decision not to proceed to arbitration on her grievance. The Court held on the record that Beauvais is not entitled to the requested relief. Therefore, the Court has denied Plaintiff's request to strike Dr. Ager as a witness and has denied Plaintiff's request to exclude evidence of the union's decision.

4

A. Motion to Strike Dr. Ager as a Witness

The Court will first address Plaintiff's Motion to Strike Dr. Ager as a Witness. On this issue, all agree that Dr. Ager has not filed an expert report in this case. Rather, the conflict here is whether he was required to do so. The Court finds that Ager need not have filed an expert report. Therefore, Inkster may present Ager as a witness in this case.

The parties contest whether Ager was required to file an expert report, and they do so through disputing two provisions under Rule 26 of the Federal Rules of Civil Procedure. First, under Rule 26(a)(2)(B), an expert witness must provide a written report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."[4] The Rule further requires that the report contain certain information, including (1) "a complete statement of all opinions the witness will express and the basis and reasons for them;" (2) "the facts or data considered by the witness in forming them"; and (3) "a statement of the compensation to be paid for the study and testimony in the case." FED. R. CIV. PROD. 26(a)(2)(B)(i), (ii), (v).

Rule 26(a)(2)(C), by contrast, does not mandate that a witness submit an expert report. Instead, it establishes that disclosure of this witness must include (1)

---

[4] This requirement does not apply where a court orders differently or the parties stipulate otherwise. FED. R. CIV. PROD. 26(a)(2)(B).

"the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705 [i.e. expert witness testimony]"; and (2) "a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. PROD. 26(a)(2)(C)(i), (ii).

Taken together, these sections provide that:

> If the treating physician's expert opinions stay within the scope of treatment and diagnosis, then the physician would not be considered 'retained' to provide expert testimony and only summary disclosures would be needed. But if a treating physician is going to offer opinions formed outside the course of treatment and diagnosis, then as to those further opinions the physician is being used in a 'retained expert' role and the Rule 26(a)(2)(B)'s report requirement will apply to the extent of that further testimony.

*Avendt v. Covidien Inc.*, 314 F.R.D. 547, 556–57 (E.D. Mich. 2016).

Beauvais maintains that the Court must strike Dr. Ager from Inkster's witness list because he was required to submit an expert report under Rule 26(a)(2)(B), and did not do so. She alleges that Ager's proposed testimony falls under this provision because it is offered "based on his claimed knowledge, skill, experience, training and/or education concerning his conclusions concerning Plaintiff's fitness for duty in the spring of 2015." Dkt. No. 42, p. 7 (Pg. ID 1712). Inkster counters that Ager is solely a fact witness and, therefore, he need not submit an expert report. Dkt. No. 43, p. 6 (Pg. ID 1802). According to Inkster, because Dr. Ager conducted the medical examination of Beauvais while she was an Inkster employee and prior to

6

the start of this litigation, he could not have been "retained or specially employed" to assist with this litigation. *Id.* at pp. 6–7 (Pg. ID 1802–03).

The Court will not strike Ager as a witness. Ager was Beauvais's treating physician and his proposed testimony relates to her treatment. Consequently, his testimony is subject to Rule 26(a)(2)(C), not Rule 26(a)(2)(B), as Plaintiff has alleged. Thus, Ager was not required to submit an expert report.

Several cases decided by courts within the Sixth Circuit confirm this result, for example, *Harms v. United States*, No. 15-cv-13215, 2017 WL 3642202 (E.D. Mich. Aug. 24, 2017). *Harms* involved injuries the plaintiff allegedly suffered in a car accident. *Id.* at *7. The treating doctor, Dr. Walter Klimkowski, had evaluated the plaintiff for both these injuries and earlier, lingering harm caused by a fall. *Id.* The parties disputed whether Klimkowski needed to file an expert report for his opinion on causation regarding the car accident. *Id.* The court concluded that Klimkowski's opinion as to the cause of plaintiff's neck and back pain arose as part of his treatment of the plaintiff. *Id.* Therefore, he was a witness under Rule 26(a)(2)(C), and not required to file an expert report pursuant to Rule 26(a)(2)(B). *Id.* This finding was primarily based on clinical notes reflecting that "though Klimkowski treated [the plaintiff] for back pain for a number of years before the accident, his treatment notes related her February 2014 flare-up directly to the car accident rather than to her prior issues." *Id.* Specifically, in clinical notes describing

7

his treatment of the plaintiff right after the accident, Klimkowski observed injuries not present only weeks prior to the incident. *Id.* He had also referred the plaintiff to another doctor for the evaluation of these new injuries, which the court interpreted as showing increased pain symptoms following the accident. *Id.*

Similarly, some of a treating physician's proposed testimony did not require production of an expert report in *Avendt*. 314 F.R.D. at 559–60. In particular, (1) testimony regarding the physician's expertise in treating and performing surgeries for the plaintiff's ailments; and (2) the treating physician's view about the best way to address the plaintiff's injuries, given the plaintiff's condition at the time at issue. *Id.* at 560. Conversely, an expert report was necessary for testimony not covering the doctor's treatment of the plaintiff. *Id.* This testimony included the doctor's statements that a process used to develop a certain product caused the plaintiff's principal harm and related injuries—a cause not mentioned in the doctor's clinical notes. *Id.* at 549–50, 560.

In this case, Inkster describes Ager on its witness list as the "[p]sychiatrist retained by City to conduct Independent Medical Examination." Dkt. No. 24, p. 2 (Pg. ID 183). What is more, Plaintiff on her witness list describes Ager's proposed testimony as related to "his examination of Plaintiff, his opinions as a result of that investigation, his communications with the Defendants as well as his history as a defense and insurance medical examiner." Dkt. No. 14, p. 2 (Pg. ID 70).

Ager is a treating physician and his proposed testimony involves that role, as demonstrated by the parties' descriptions and evidence that the independent medical examination occurred in 2015 while Beauvais was endeavoring to return to work. Accordingly, to the extent his testimony is confined to his evaluation of Beauvais, this testimony is similar to the testimony that the *Harms* and *Avendt* courts permitted without accompanying expert reports. Like Klimkowski's testimony in *Harms*, Ager's proposed testimony would cover his view of Beauvais's condition at the time of his evaluation. Proper subjects of Ager's testimony also include his knowledge and expertise regarding Beauvais's alleged ailments and his opinion of whether she was fit for duty in 2015. As, indeed, those topics did not require an expert report for the treating physician in *Avendt*.

Plaintiff's argument here, at its core, is that because Ager is an expert, he must file an expert report. *See* Dkt. No. 42, p. 7 (Pg. ID 1712). As outlined above, however, this position contradicts the plain language and intent of Rule 26. In addition, commentary on the 2010 Amendment of Rule 26—an amendment which required summary disclosures by experts not required to provide an expert report—establishes otherwise. The commentary explains that "[t]his amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement. An

9

(a)(2)(B) report is required only from an expert described in (a)(2)(B)." FED. R. CIV. PROD. 26(a)(2)(C)(i), Advisory Committee's Notes on 2010 Amendments.

Beyond even the language of Rule 26 and its commentary, courts have rejected arguments similar to those Beauvais raises here. For instance, in *Wilson v. Hill*, No. 2:08–cv–552, 2012 WL 1068174 (S.D. Ohio Mar. 29, 2012), the plaintiff unsuccessfully argued that his treating dentist was required to file an expert report under Rule 26(a)(2)(B). *Id.* at \*3, \*5. The court reached this conclusion because the dentist did not provide expert testimony in the ordinary course as envisioned by Rule 26, and the dentist was not specifically retained to provide expert testimony. *Id.* at 5–6.

This Court will reject Beauvais's arguments on the same grounds. Inkster correctly notes that Ager was hired before this litigation began, and he evaluated Beauvais to help Inkster assess whether Beauvais was fit to return to work. Ager, then, was not specifically retained to participate in this litigation; and as long as his testimony pertains to his treatment of the Plaintiff, he is not required to file an expert report. Accordingly, the Court will not strike Ager as a witness.

B. Union Decision

Beauvais maintains that evidence of the union's decision not to request arbitration is inadmissible under Federal Rules of Evidence 401, 403, or both. The Court is unmoved.

The Court will first turn to Plaintiff's arguments regarding Rule 401.

1. Rule 401

To begin, evidence must be relevant to be admissible, and "the standard for relevance is 'extremely liberal.' " *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 468 (6th Cir. 2012) (quoting *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009)); *see also* Fed. R. Evid. 402. "[E]vidence is relevant if it 'advance[s] the ball' one inch." *United States v. Lang*, No. 15-5997, 2017 WL 4924680, at *4 (6th Cir. 2017) (alteration in original) (quoting *Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009)). The rule defining relevance, Rule 401, establishes that evidence is relevant where (1) "it has any tendency to make a fact more or less probable than it would be without the evidence"; and (2) "the fact is of consequence in determining the action."

Beauvais argues that the union decision is not relevant to her Title VII retaliation claim because it concerns whether Inkster complied with the collective bargaining agreement in suspending and terminating the Plaintiff—not whether Inkster violated Title VII. Dkt. No. 45, p. 5 (Pg. ID 2230). Inkster counters that the union's decision was not limited to the applicability of the collective bargaining agreement. Dkt. No. 53, p. 2 (Pg. ID 1610). Instead, according to Inkster, the union concluded "that Beauvais had falsified records and that her actions were deliberate, her falsification was material and that the City had acted promptly and in good faith when it discovered the falsification." *Id.*; *see also* Dkt. No. 53-2, p. 2 (Pg. ID 2632).

11

Beauvais is mistaken. This evidence does not solely pertain to the collective bargaining agreement, and it is highly relevant. A critical issue in this case is whether Inkster retaliated against the Plaintiff in violation of Title VII by terminating her employment. The union's decision directly addresses Inkster's justification for terminating Plaintiff's employment—whether she made false statements during her examination with Dr. Ager. Finding that Beauvais had falsified certain records, the union stated that it did not pursue arbitration because it would not prevail. *See* Dkt. No. 53-2. As this determination specifically covers the validity of Inkster's reasons for terminating Plaintiff's employment, it is relevant.

Plaintiff unconvincingly relies on cases both not binding on this Court and not instructive. For example, *Arlia v. Lively*, 474 F.3d 46 (2d Cir. 2007). In *Arlia*, the Second Circuit concluded that a district court improperly allowed evidence about why the plaintiff was not seeking a certain remedy. *Id.* at 52. The district court had determined that the absence of evidence on this subject "would become the proverbial 'white elephant' in the room, distracting and confusing the jury." *Id.* at 53. The plaintiff had never sought the remedy in that case, had not referenced the remedy in the complaint, and the remedy was not at issue in the litigation. *Id.* "To open the doors of relevance so wide as to allow a plaintiff to recite facts concerning claims he is not making or damages he is not seeking," the Second Circuit held, "would violate the spirit of the Federal Rules and 'hamper rather than advance the

search for truth.' " *Id.* (quoting 2 Weinstein & Berger, *Weinstein's Federal Evidence* § 402.02[3], at 402–15) (citing FED. R. EVID. 401 advisory committee's note).

Unlike in *Arlia*, whether Beauvais was truthful during evaluations with Dr. Ager directly impacts the legality of Inkster's termination of her employment. Accordingly, this evidence is relevant under Rule 401.

2. Rule 403

Beauvais mounts a final stand to the introduction of the union evidence by arguing that the Court must exclude it under Rule 403. This is a closer call than the relevance question, but the Court will still find that Rule 403 does not require the exclusion of this evidence.

Rule 403 provides that "[a] court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." " 'Unfair prejudice means the undue tendency to suggest a decision on improper considerations; it does not mean the damage to a [ ] case that results from the legitimate probative force of the evidence.' " *Alvarado v. Oakland Cty.*, 809 F. Supp. 2d 680, 685 (E.D. Mich. 2011) (alteration in original) (quoting *Doe v. Claiborne Cty.*, 103 F.3d 495, 515 (6th Cir. 1996)). And "[w]ith respect to 'unfair prejudice,' 'confusing the issues,' and other factors, [the Sixth Circuit] has noted that the exclusion of evidence may be

13

appropriate when the evidence suggests to the jury that it should decide the case 'on an improper basis[.]' " *Journey Acquisition–II, L.P. v. EQT Prod. Co.*, 830 F.3d 444, 459 (6th Cir. 2016) (quoting *United States v. Poulsen*, 655 F.3d 492, 509 (6th Cir. 2011)).

Beauvais alleges that evidence of the union's decision is unfairly prejudicial and will mislead the jury, because Inkster will use the evidence to establish that the union believed Beauvais's complaints lacked merit. Dkt. No. 45, p. 8 (Pg. ID 2233). The Court disagrees. The union determined that Beauvais made false representations to Dr. Ager, and therefore, it would not proceed to arbitration with her claim. The union did not opine on the validity of Beauvais's Title VII claim.

Courts have admitted similar findings into evidence, albeit with a limiting instruction to the jury that an agency's conclusion must not supplant the jury's decision. Equal Employment Opportunity Commission ("EEOC") investigations of plaintiffs' Title VII claims present analogous situations. The Sixth Circuit summarized this body of law, explaining that "[a] probable cause determination is to be distinguished from an EEOC letter of violation, which is widely considered to be presumptively inadmissible 'because it suggests that preliminarily there is reason to believe that a violation has taken place' and therefore results in unfair prejudice to defendant.' " *Williams v. Nashville Network*, 132 F.3d 1123, 1128–29 (6th Cir. 1997) (quoting *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1095 (5th Cir. 1994)).

Indeed, in *Blakely v. City of Clarksville*, 244 F. App'x 681, 683 (6th Cir. 2007), the Sixth Circuit affirmed a district court's decision to admit an EEOC determination into evidence. The Sixth Circuit acknowledged that " '[a] strong argument can be made that a jury would attach undue influence to this type of agency determination, viewing it as a finding of discrimination . . . rather than as a mere finding of probable cause." *Id.* (quoting *Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997)). Yet in *Blakely*, the determination was admissible evidence because "the district court minimized any potential undue influence by specifically instructing the jury that it was free to disregard any conclusions contained in the report because the EEOC may not have had the same evidence as the jury had." *Id.*

Likewise, a court denied a motion *in limine* to exclude Ohio Civil Rights Commission and EEOC findings of the lack of probable cause regarding discrimination claims. *Geiger v. Pfizer, Inc.*, No. 2:06-CV-636, 2009 WL 1026479, at *12 (S.D. Ohio Apr. 15, 2009). The court reasoned that the evidence was admissible—with a limiting instruction as in *Blakely*—to establish the defendant's motive and the chronology of the plaintiff's protected activity and performance evaluations and "merit increases." *Id.*

The decision by Plaintiff's union is perhaps even less prejudicial than a finding by the EEOC, given that the union is not a federal agency with responsibility

for investigating Title VII claims. Therefore, as in the cases detailed above, the Court may allow this evidence with a limiting instruction informing the jurors that they may ignore this evidence.

## IV. Conclusion

Plaintiff has filed a Motion to Strike Dr. Harvey Ager as a Witness [42], and has also filed a Motion *in Limine* to Exclude Evidence of a Union's Decision Not to Arbitrate Plaintiff's Grievance [45]. At oral argument on these motions, and for the reasons detailed above, the Court DENIED Plaintiff's Motion to Strike [42], and DENIED Plaintiff's Motion *in Limine* to Exclude Evidence of the Union's Decision [45].

IT IS SO ORDERED.

Dated: February 8, 2018  /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 8, 2018, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk